# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREG CONRAD, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) Case No. 13-CV-324-JHP |
| FIRST NATIONAL BANK OF FORT SMITH, and Samuel T. Sicard, | )<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are Defendant Samuel T. Sicard's ("Sicard") Motion to Dismiss for Lack of Personal Jurisdiction, [Doc. No. 10], and Plaintiff Greg Conrad's Response thereto, [Doc. No. 15]. For the reasons set forth below, Sicard's Motion to Dismiss is **DENIED**.

## BACKGROUND

### A. Procedural History

On June 6, 2007, Plaintiff initiated the instant action in the District Court of LeFlore County, Oklahoma, asserting breach of fiduciary duty and intentional interference with contract and business expectancy claims. [Doc. No. 3, Ex. 1]. The case was removed to this Court on July 22, 2013. [Doc. No. 3]. On August 20, 2013, Sicard filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, which included an affidavit regarding his contacts with the State of Oklahoma. [Doc. No. 10]. Plaintiff filed a response in opposition to Sicard's motion and also included an affidavit, along with other exhibits, regarding Sicard's contacts with the State of Oklahoma. [Doc. No. 15].

## B. Factual Background[1]

In his Complaint, Plaintiff alleges that he was attempting to complete a transaction, whereby he would purchase certain equipment from Six Degrees, LLC ("Six Degrees") and immediately resell the majority of this equipment to NCH Corporation ("NCH") for a net profit of approximately $100,000 (the "Planned Transaction"). To complete the Planned Transaction, Plaintiff sought financing from First National Bank of Fort Smith ("First National"), a bank located in Fort Smith, Arkansas, with which Plaintiff had an established business relationship. To that end, Plaintiff provided First National with a copy of his contract with NCH, wherein NCH agreed to purchase the equipment Plaintiff intended to purchase from Six Degrees. In addition, First National was aware of other essential facts regarding the Planned Transaction between Plaintiff, NCH, and Six Degrees.

In October 2012, Sicard, president of First National, communicated with a partner at Six Degrees, revealing certain details regarding the Planned Transaction and providing Six Degrees with a copy of the contract between Plaintiff and NCH without Plaintiff's consent. As a result of these communications, Six Degrees rescinded its offer to sell Plaintiff the equipment.

Sicard had a long-standing business relationship with Plaintiff. Starting in 2006, Sicard began calling on Plaintiff in Oklahoma approximately once per month on behalf of First National, performing due diligence and soliciting business from Six Degrees and other business entities Plaintiff was associated with. In addition, Sicard participated in First National's provision of financing to Six Degrees for a facility it built, which was used to store the

---

[1] Because no evidentiary hearing was held on this matter, the Court construes the pleadings and affidavits in a light most favorable to Plaintiff and considers facts submitted by Sicard only if such facts are uncontroverted. *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995); *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012); *Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012), petition for cert. filed (U.S. Nov. 6, 2012) (extensively discussing standard for drawing inferences and canvassing the circuits).

equipment that was part of the Planned Transaction. Further, Sicard viewed this equipment on several occasions during his trips to Oklahoma and was aware at the time he contacted the Six Degrees partner that it was part of the Planned Transaction. Sicard also specifically conducted business over the telephone with Plaintiff, while Plaintiff was in Oklahoma, regarding the financing for the Planned Transaction.

**DISCUSSION**

The purpose of allowing a jurisdictional challenge such as the one raised here is to protect a defendant who has no meaningful contact with a state from being forced to litigate in an unfamiliar and potentially unfair forum. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1090 (10th Cir.1998). Where, as here, the Court determines that an evidentiary hearing is not necessary, the plaintiff must only make a *prima facie* showing that jurisdiction is appropriate in order to overcome such challenge. *Id.* at 1091. The defendant must then present a compelling case that the exercise of jurisdiction would somehow be unreasonable. *Id.* At this early stage of litigation, the plaintiff's burden is light, and all doubts must be resolved in plaintiff's favor. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir. 2000).

To establish personal jurisdiction over the defendant, the plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. *Id.* Because Oklahoma's long-arm statute permits any exercise of jurisdiction consistent with the U.S. Constitution, the personal jurisdiction inquiry conflates into a single due process inquiry. *Id.* Due process requires "only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The existence of such minimum contacts must support the exercise of either general or specific jurisdiction.

Specific jurisdiction analysis involves a two-step inquiry. First, the Court must determine whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). "Second if the defendant's actions create sufficient minimum contacts, [courts] must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI Holding,* 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of Calif.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

**A. Minimum Contacts**

The Court must address the minimum contacts prong of the inquiry first.

> In determining whether a defendant has established minimum contacts with the forum state, we examine whether the defendant purposely availed itself of the privilege of conducting activities within the forum State. A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and ... the plaintiff's claim arises out of or results from actions by the defendant *himself* that create a substantial connection with the forum state.

*Benton v. Cameco Corp.,* 375 F.3d 1070, 1076 (10th Cir. 2004) (internal citations omitted); *see also*, *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

After careful consideration of the circumstances of this case, the Court finds that Sicard has established minimum contacts with Oklahoma. Sicard's solicitation, negotiations, correspondence, due diligence trips, and activities related to the Planned Transaction created a connection with Oklahoma such that he should have reasonably anticipated being haled into

court in Oklahoma. Hence, Sicard has sufficient minimum contacts to support the exercise of personal jurisdiction by this Court.

**B. Traditional Notions of Fair Play and Substantial Justice**

Even though the Court finds there are sufficient minimum contacts between Sicard and Oklahoma, the Due Process Clause requires the Court to ensure that the exercise of personal jurisdiction over Sicard would not "offend traditional notions of fair play and substantial justice." *OMI Holdings, Inc.,* 149 F.3d at 1091. The question under this standard is "whether a district court's exercise of jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *Id.* To determine whether the exercise of jurisdiction would be reasonable, the Court must consider "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* at 1095. Furthermore, an interplay exists between the minimum contacts and the reasonableness prongs of the personal jurisdiction analysis.

> [T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing of [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].

*Id.* at 1092 (quoting *Ticketmaster–New York, Inc. v. Alito,* 26 F.3d 201, 210 (1st Cir.1994)).

The Court finds that Sicard cannot meet his burden to establish that the exercise of personal jurisdiction by this Court would "offend traditional notions of fair play and substantial justice." *OMI Holdings, Inc.,* 149 F.3d at 1091. Significantly, because Sicard conducts business from a location on the Oklahoma-Arkansas border, regularly calls on customers in the State of Oklahoma, and has recently merged with another banking institution located in Sallisaw,

5

Oklahoma, it can hardly be argued that this Court's exercise of jurisdiction over Sicard is unreasonable. Accordingly, this Court has personal jurisdiction over Sicard, and his motion must be denied.

## CONCLUSION

For the reasons detailed above, Sicard's Motion to Dismiss, [Doc. No. 10], is **DENIED**.

**IT IS SO ORDERED** this 17th day of October, 2013.

James H. Payne
United States District Judge
Eastern District of Oklahoma